The case of the afternoon is 410-0230, CC Disposal v. Veolia ES Valley View Landfill. For the appellant, Mr. Isak Knut. Mr. Knut, and for the applee, Mr. Robbins. You may proceed. Thank you, Your Honor. May it please the Court, my name is Michael Knut, representing the appellant. The trial court below held that the Solid Waste Disposal Agreement at issue in this case can only be interpreted one way. And because the appellant, Veolia, interpreted that contract differently, the entire contract was nullified and rescinded. We've identified three errors that we claim the trial court made in construing this contract, any one of which required reversal. The first being an issue of contract interpretation. The second being the failure to even consider the adequate legal remedy available to the plaintiff. And the third being the court's analysis of the material breach element. In addressing the first issue, and I believe this is one of the key issues here, the contract interpretation issue, the lower court decided as a matter of law, following the summary judgment hearing, that the contract unambiguously required Saturday hours, Saturday operating hours at the landfill. And I'm sure that the justices have reviewed the contract and seen that the only reference to days of the week or operating hours contained in the contract is in Exhibit B, which is entitled Disposal Rates. It cannot be... Would the argument be the same if you decided to open on Monday, Wednesday, Friday, but not the rest of the week? Yes, Your Honor. My argument would be the same. Would it be the same if you opened on Monday, Friday? It would be the same, Your Honor. And I believe that we would then be putting ourselves in jeopardy of running afoul of the covenant to operate in good faith. I still maintain that the hours and the days of the week are not a term of the contract when you view just simply the contract itself, which is the review that needs to be done with regard to this first issue. If we had only opened for two weekdays, for example, I believe that there would be potentially a cause of action by the plaintiffs, but that doesn't make the one reference to the days and hours of operation a term of the contract. Well, it seems to me that being open is the contract. Absolutely. The intent of the parties here with regard to the contract, we were to operate a landfill. The haulers were to bring their waste to the landfill. They also got the benefit of predictable rates that increased at a specified amount each year. The specific hours of operation, which is really just the Saturday hours that are at issue here, that was to be a term of the contract that would have been contained in the body of the contract itself with the other essential terms that constitute the contract here. But in terms of determining whether or not the one reference to operating hours 7.30 to 1.30 on Saturday, whether that's a term of the contract... So if you changed it from 7.00 to 11.30, you think that the argument would be the same, but you might begin running into the reference you made to are you really operating in good faith if you did that? Yes, Your Honor. I agree with that. If we had changed the hours arbitrarily, instead of from 7.30 to 1.30 to 7.00 to 11.00, we may have affected the haulers' business and we would potentially face consequences there. But the fact of the matter is that the day-to-day operation of the landfill is not set out in terms of the contract. There's simply that one reference in the disposal rate sheet, which that sheet, clearly there's one reference to it in the body of the contract, and that's in Article 4, which also discusses disposal rates. And viewing that exhibit in context of the rest of the contract, which we're required to do, it clearly has a different date, it was prepared in conjunction with some other document than the rest of the contract. It contains provisions in that disposal rate sheet that have nothing to do with the relationship here, such as disposal of asbestos in mobile homes and things that don't have any connection to the relationship between CC disposal and Veolia. So I believe that in the context that it cannot reasonably be argued that that disposal rate sheet is anything other than a schedule of disposal rates. And what the plaintiffs have done here is cherry-picked one provision out of that and tried to argue that that is a term of the contract, when really that is taken out of context. Was there any testimony about operating hours for the 30 years that it was operated before it was purchased? Yes, Your Honor, there was testimony to that effect going backwards in time. And that testimony really comes into effect in the other issues that are identified. Clearly there was testimony that the Saturday hours were maintained. And the plaintiffs thought those were important? Yes, they testified that they were important, that they relied on those in entering into the contract, no question about that. And they had testimony from a gentleman named Glenn Lynch who went way back in time and negotiated on behalf of the plaintiffs. But for purposes of analyzing the contract interpretation issue, the court need not consider that testimony, but at least for this portion of the argument, just focus on the document itself to see whether or not the court was correct in determining that that was unambiguous. Our position is that it unambiguously is not a provision of the contract. But even if the court finds that the Saturday operating hours constituted a contract term that Veolia breached, then as with the vast majority of contracts that parties enter into, a vast majority of breaches, there is a legal remedy that could have been utilized and could have made the parties whole here, and that is simply the imposition of money damages for the breach. The lower court did not address the availability of a legal remedy in this situation. In fact, in the court's written order, the court simply went from discussing the provision of Saturday hours, jumped right to an analysis of whether or not the breach was material, which I'll address in my third point, that goes to the appropriateness of rescission. The court did not address the availability of money damages. The plaintiffs chose not to present evidence of their monetary losses in connection with this finite number of Saturdays that the landfill was closed. Did you argue to the trial court that this was an inappropriate case for an equitable remedy and that the damages could be sought if a breach occurred? Yes, that was argued down below, Your Honor, and it was brought up. So what does it mean, then, when the court made its decision and did not comment upon that argument? Well, I believe it means that the court erred in not commenting on the fact that there was a legal remedy available, and it should have at least... Let me be more explicit. Is the court required to comment, is it erred not to comment, or is it the argument that the court erred on the substance? Well, to address your question, Your Honor, I believe that it is a combination. I believe that it is clearly error for the court not to address and consider the legal remedy that was available. For the court not to even mention it, then, on its face, the record is devoid of an indication that the court undertook the necessary step of considering the legal remedy that was available. These are two businesses that are operating. There was testimony in the record. In fact, I think the plaintiffs were aware of this particular issue. Mr. David Carter, at pages 49 and 50 of the transcript, when he was asked about damages, testified, I don't know how you would figure all of that. But then a couple pages later, at page 52, testified that he could have saved $80 to $100 per day per truck by taking the garbage to the Clinton landfill. And I only point that out to demonstrate that the damages were calculable in this instance. Issues such as the, and these were even brought up in the testimony, additional fuel cost, mileage, wear and tear on the truck. These are all items that businesses evaluate every day in preparing their income taxes or depreciation or what have you. It could have been done, it could have been considered here. It was a finite number of Saturdays in which the landfill was closed. And there could have been a number arrived at that could have compensated the plaintiffs for the breach, if there was a breach. And clearly, clearly, rescission was not the necessary or the appropriate remedy in this case. And we believe it was an abuse of discretion to award rescission in this case. Of course, the question as to whether rescission is appropriate is whether there was a material breach of the contract or was the object of the contract itself defeated. And I think it's obvious from the record that the essential object of the contract was not defeated. And this goes to your Honor's question earlier about the testimony regarding Saturday hours. The landfill was closed for a certain number of Saturdays. Clearly, there was testimony that the plaintiffs relied on the landfill being open on Saturdays to operate. The fact of the matter is that this was a contract for the operation of a landfill. The landfill was not shut down permanently. It was open the rest of the week. The business purpose of both entities was fulfilled. Granted, if there was a breach, which we argue there was not by the terms of the contract, it could have been addressed through the imposition of monetary damages. But the essential purpose of the contract was not defeated. It's important to really see what's going on here. And I believe there was testimony by both sides in the record down below. First of all, it's important to note that Veolium was a successor to the original party to this contract. This was a contract not only for the operation of a landfill and the contract which required the haulers to dump their waste at the landfill, but it started out with the subsequent owners acquiring the shares of the haulers and actually buying the landfill from them. So the haulers got a substantial benefit at the outset. As a part of that deal, I will call it, they were then required to bring their waste to the landfill. What's happening now is that having gotten the benefit of receiving the consideration for selling their shares, the haulers, in this case specifically CC Disposal, trying to get out of their end of the bargain then, which is to continue bringing their waste to the landfill. If Veolium, which again was not a party to those original negotiations, if they made a mistake by not appreciating the fact that the parties relied on Saturdays to be open, if they made a mistake in that regard, that can be addressed through the imposition of monetary damages, which the trial court should have considered and imposed. But it did not result in a total failure of the contract. And I would argue that there was reference in the records to the fact that Veolium, this could put the hauler out of business, they could result in an explosion of the truck if they weren't able to dump their waste on Saturdays. But none of that occurred. Businesses continued to operate and there may have been some inconvenience or some, as I've said several times, some potential damages that were incurred that should have been addressed at the lower court through a consideration of monetary damages. Precision is an extraordinary remedy. It should only be used in extraordinary cases. And to essentially throw out the contract here, in this instance, when it was established in our briefs that 1% of the days that Veolia operated this landfill, 1% of the days they closed. That was 48 Saturdays, I believe, out of 3,500 or so days that the landfill was open. That clearly cannot constitute a breach of contract. If I was a senior citizen, which I am, and I didn't drive much at night, and I bought a vehicle that I thought would run all the time, and I discovered that after nightfall, it wouldn't turn on. Should I be able to rescind the contract until the GM takes the car back? Or would GM say, well, you really don't drive much at night anyway. And we can calculate the damages to you by figuring out how often you've been deprived of driving at night. And we can just give you some money, and you keep the car. Well, you may have a remedy there, Your Honor, if... Why isn't it rescission? In any event, I know there are different laws regarding a defective product, and it wasn't suitable for the purpose for which I purchased it, and automobiles are treated differently. But the idea is, it's kind of in the eye of the beholder. If trial court heard it, we're thinking about the materiality, the trial court heard evidence from people that said, we wouldn't have approached this contract or this deal if we knew that there was going to be a Saturday closure. And yeah, we reaped the benefit of our bargain, but we did it for a decade. We didn't look around, we didn't look for things to quibble over. For a decade after we sold out, we come there, and the only time we started complaining about the contract was when you started closing on Saturday. And then when we started complaining about it, you waited until we filed a lawsuit, and then you reopened on Saturday. If you cast these haulers in the light of a consumer, the consumer is going to have a hard time. And the consumer is saying, you know, wait a minute, wait a minute, part of the reason I entered into this contract was because of convenience, reliability, I've been a faithful customer for a decade, in return for how nicely you treated me in buying out my shares, but now it doesn't work anymore. What's wrong with that analysis? I understand your analysis, Your Honor. The difference here is that for years, this landfill operated, and it was kept open Monday to Saturday, for a period of time, it was closed on Saturdays, for whatever reason, and I looked again this morning, I don't even think the reason was clear in the record as to why it closed, and understood it was not open until the lawsuit was filed. At least that's what the court found. I think there was some conflicting testimony in that regard, that it opened in May rather than in November. I think someone testified that it was open on occasion in May, and it might have been for a special purpose. And if that constitutes a breach, Your Honor, then there are damages that can be imposed. I understand the business of if it constitutes a breach. What am I missing? How is this not a breach? Well, my first argument, Your Honor, is that the Saturday, Monday, Tuesday, Wednesday, Thursday, Friday, Saturday, Saturday, Sunday, Monday, Monday, Monday, Monday, Monday, Monday, Monday, Monday, Monday, Monday, Monday, Monday, Monday, Monday. And that's why our requirement was not a term of the contract, so that would be our first position. What were the terms of the contract, and when it was going to be open? There were no specific terms. So we just signed up, and nothing was agreed upon. So we decided Tuesday afternoon, 1 to 3, what's the big deal? Well, I think if they, in practical terms, if they had decided to stay open 1 to 3, the landfill could not have remained open very long. Yeah, but they wouldn't be in violation of the contract, according to your argument, would they? Well, I think that technically that's correct, Your Honor. They would not be in business very long, but I think that... Should the contracts be interpreted in a fashion that makes sense? Absolutely. I agree with that. And if everyone says, and apparently now, is there contrary testimony that Saturday is an important day for the landfill to be open? There is testimony in the record by the plaintiffs that Saturday was important to them. Is there any contrary testimony? That says, yeah, Saturday's no big deal. Not in the record, Your Honor. There's no testimony to that effect. This is a court of record, counsel. If it's not in the record, then there is no testimony. Wouldn't that be correct? Absolutely. I agree with Your Honor. So then, on what basis are we to assume that Saturday isn't an important part of the contract? Well, there is no contrary testimony that says Saturday was not an important day. And in fact, the parties operated with Saturday as an open day for years. And I guess the thrust of my argument is, if Veolia breached the contract, and Your Honor, if we accept that it were to be open, then they did breach the contract. Then, shame on them. Damages should have been imposed, but that's no reason to throw out the contract. Well, let me ask this other aspect of it. If I'm the trial court, kind of following up on Justice Connick's line, I'm wondering about what's happened here, and about whether the plaintiffs should be forced to continue in a contractual relationship with the defendants, who, it strikes me, the trial court could easily have concluded, were essentially being frivolous and irrational with regards to their obligations towards the plaintiff, given the testimony that Saturdays are an important part of waste disposal. And for half a year, these guys said, no, forget it. We're closed. We're not going to be open for you. Assuming, for the moment, that damages could even be reasonably calculated for the damage suffered, why shouldn't the trial court decide that maybe the plaintiffs, given the nature of this breach, when I say the nature of this breach, I mean this is kind of like a half a year's breach, for no damn good reason. Does any appear in the record, by the way? Reason why the landfill was closed? I did not find a reference to that. Okay. So, for no damn good reason, for half a year, they breached this important feature. Why should I keep the plaintiffs in this contract with these people, who have essentially demonstrated themselves to be unreasonable and not trustworthy business partners? Why shouldn't that be part of the overall judgment by the court in deciding whether rescission is appropriate? Well, clearly the trial court is in a position to evaluate that, Your Honor, but I would argue that... My question is, would that be an inappropriate consideration? Inappropriate for the trial court to consider those factors? Yes. I don't think it would be inappropriate, Your Honor. I don't think the evidence supports the fact that Veolia was unreasonable or... Well, okay, then the foundation or the predicate to the statements I gave you, what part wasn't correct? That the closing wasn't unreasonable? That they demonstrated no basis for it? That it went on for six months despite the importance? What? The landfill was closed for a certain number of Saturdays. It may have gone... The trial court found it went on for six months. Well, counsel, if the trial court found it went on for six months, it went on for six months. Understood, Your Honor. That's what we're dealing with here, and there can be damages imposed for that. The landfill operated. The other days of the week it was open. The plaintiffs continued to bring their waste there. According to the record, they complained verbally a few times when they tried to show up on Saturdays or went there on other days and complained about it. But the fact of the matter is, they disposed of the waste elsewhere. But why shouldn't the trial court decide that your clients were no longer reasonable, good-faith partners to these people and that they should not be required to have to deal with them further? Because I don't think the evidence supports that. What part of the evidence doesn't? What evidence did you present to the contrary? The evidence we had one witness at trial, and granted there was no reason provided for the Saturday closures, but if you look at the entire scope of this relationship... So your position is the plaintiff should just suck it up? No, Your Honor. What's the problem here, right? No, Your Honor. Clearly, the plaintiff won down below, and the trial court erred in failing to consider the legal remedy that was available to them. And this could have been addressed with money damages. And the contract, the law disfavors nullifying or rescinding... What about this situation does the law disfavor rescinding? The law, I'm not being asked. So I'm trying to figure out why exactly is it the policy of law, the policy of the state of Illinois to force these plaintiffs under these circumstances to have to continue with a contract with obviously unreliable, unreasonable partners who did not operate in good faith? Well, I have to argue with Your Honor. I don't think they did not operate without good faith. It was closed on Saturdays. That's the dispute. If they were closed on Saturdays, that constitutes a breach of the contract, and there is a remedy for that. Just as there is with any other breach of any similar contract. It doesn't mean that they were unreasonable or in bad faith or anything in that regard. I think that takes it to a different level. This could have been addressed with the imposition of damages. There's even some evidence in the record as to the monetary damages that were sustained. And the fact of the matter is the landfill was reopened, and they're back to operating six days a week. Thank you, counsel. We'll hear from you on rebuttal. Thank you. May it please the Court and counsel. I'm from Decatur. And what is going on in Decatur with regard to Veolia, the appellant here, and the independents like C.C. Disposal is that Veolia has bought up, and this is in the record I believe, bought up most of the independents over time, and it in fact is the 600-pound gorilla in the community when it comes to not only operating the landfill but also owning and operating most of the routes. There are five or six independents left, one of whom is C.C. Disposal. And obviously if Veolia continues in the same vein that it has, it will be interested in buying up the remaining few. And obviously if anything happens to those independents that remain, like C.C. Disposal, that would damage their business, it makes them more likely to want to sell, probably at a bargain price. I think that's an interesting argument. And I always like to know what's going on in the real world. But at the same time, we're talking about a record. What testimony was there that there was an ulterior motive in Veolia closing for 11 months? And the most generous way to put it is put a squeeze on or let the independents know that you're kind of at our mercy so you better sell out to us. I assume that's part of the theory, but where is that in the record? I mean, maybe we can infer that, or it's one of those arguments where, well, everybody knows what's really going on here, but I'd like to know whether the record supports it. Your Honor, I believe that Senior Mr. Carter testified, and maybe if not Junior Mr. Carter, Dave Carter testified, and perhaps even Mr. Lynch, at the trial that there were only a few left. Perhaps it isn't in testimony. It may be in argument that there was a motivation for this closure and that that may be. I don't believe that to answer your question straight on, where is the testimony that connects those dots, I don't think there is any testimony that says that's what we observe or we think. And in fairness, there isn't anything in the record that supports the idea that the plaintiffs can now just cut a more favorable deal in another community, and that's why they went out of the contract. That's another one of those, well, that's probably what's going on, but that isn't really supported in the record either. It is not. But there are two sides to the story. The three points that were made, sanity hours, I think one thing that I'd like to point out that's interesting in this record is that there were joint, or not joint, but cross motions for summary judgment filed and heard by Judge Little. And at that time, as of the time the summary judgments were heard, there was no answer on file. No answer had ever been filed. We objected at that point and argued in our response that therefore the complaint, which is not for rescission but for declaratory judgment, which you could say amounts to a partial rescission, that this complaint was admitted because there was no answer on file. We made that point at the summary judgment that all of our complaint had been admitted and the case should be over. The court did not agree but did find at that level, and the orders are attached to the record filed by the appellant, that order, that first order on summary judgment, Judge Little did find that indeed hours were a part of this and Saturday openings were a part of this contract. But he did not agree with us that the case should have been over at that point. Four or five days later, or maybe five or six days before the trial, an answer was finally filed and we proceeded to the trial. Then the evidence was taken, witness testified, and so forth. It is our position, or my position, and I didn't file a cross-appeal here because we had won, and it's always, you always have to debate with yourself as an attorney whether or not, if you disagree even fairly strongly with the trial court on a procedural, do you file and take an appeal or not? And I didn't. Appeal what? Well, appeal the fact that we did not win, Your Honor, at the summary judgment. Because there was no answer. You don't have to take a cross-appeal if the record supports that. Since you're the athlete, we can always say, since it's judgments that we're reviewing, we can say we're going to affirm based upon the fact that summary judgment should have been granted or whatever. You don't have to. You never have to take a cross-appeal when you've won. But why is this I don't understand the summary judgment argument? There's no requirement that they have to answer before moving to summary judgment, is there? Technically not, but when there was no answer on file, everything in the complaint for declaratory judgment was admitted. Well, maybe. Under the rules. Was it verified? Pardon? In fact, it was verified by Mr. Carter, the president of the company. Well, but they could dispute that stuff. They don't have to file an answer. They could dispute it with other affidavits or discovery-related material, did they? Did not. Well, that's the important part. Did not. Okay. Just made the arguments that are in the record and did not supply any testimony by affidavit or anything else. You argued to the trial court you wanted rescission, not damages? We argued to the trial court based on our complaint for declaratory judgment, and that's another point that I want to make in response to counsel's argument here today. And I don't think it was well made in our brief, but this is not a technically equitable complaint for rescission. It is a complaint for declaratory judgment under the Act requesting the trial court to find that Veolia, the appellant here, had materially breached the contract by not opening on Saturdays. And specifically, we asked the court to declare not a rescission of the entire contract, but only that that justified CC disposal, our client, from not being bound by this confiscatory or this monopolistic requirement. What's the difference between rescinding the contract and holding that you're not bound by the term that says you don't have to pay? I think it's a partial rescission, Your Honor. I would say that you could argue that. What does that mean, a partial rescission? I don't even understand. I don't know. You're contracting a doubt. All I know, Your Honor, is that we pled declaratory judgment under the statute, we cited the statute, and we asked for very specific relief, and the trial court agreed with us. With the trial court having agreed with you, is there any contract left? I think there is. We take our refuse out there, and if they accept it, then we pay for it according to the terms of the contract. What part of the contract was rescinded then? The order indicates specifically that the part that was, whether you call it rescinded,  or whether you call it a declaration that it was an excuse because the other side had materially breached, it refers specifically to the obligation to deal exclusively. Because they had forced C.C. Disposal to go to another landfill on Saturdays, the court saw, I think, some reason and justice in the idea that they should be bounded. You still can use all the terms of the contract, except you're not required to have, if you choose to go to this landfill, but you don't have to go there anymore exclusively. That's technically what the order, the order simply that we requested and that the court entered, Justice, was to that effect, that we were not bound, that C.C. Disposal was not bound to exclusively deal, in fact, they hadn't been because they had been forced to go elsewhere, at least on Saturdays. So, I would argue that this, rather than, the main argument that has been made, I think, in the briefing, and again today, by Veolia is that there is an alternative remedy. And if, in rescission, you have to consider whether money damages are calculable or not, and I would cite this court's decision in a case of A.G. Farms, Inc. versus American Premier Underwriters. It's a 1998 decision by Justice Garmon, which contains the following quote, the case law is clear, however, that the existence of another remedy does not preclude a declaratory judgment action. And it's cited in the Illinois Supreme Court case of LaSalle National Bank. I think it's clear that in declaratory judgments, it's distinct from a pure equitable decision or complaint that requests a complete rescission, which we did not. We have a, for example, there is another provision in this contract, which remains, which requires CC disposal to, if it wants to sell to another party, that it has to give a notice of first right of refusal to Veolia. We think that remains. We think that in order to comply with the balance of the contract, which the court did not affect by its order. I don't understand the whole argument in concept. It seems to me that the breach that occurred in the past is now over, and if you want to continue with this contract, then I don't see why you should be, why any, if you want to continue with the contract, why should any of the contractual terms that they violated in the past be, why should you be excused from anything? Why shouldn't we be excused from everything? No. Maybe I misunderstood, Your Honor. It's understandable because I stated it so badly, Counsel. I apologize and I will try again. If the only breach was the Saturday closing, right? Correct. It's not closed anymore on Saturdays. Correct. If I understand you correctly, you now say, well, we want to have the benefits of this contract except for one thing, which is we shouldn't be required to exclusively have to use Veolia. Is that the name? Veolia. Veolia. I think that's how it's said. Do I understand your position correctly? It is not. No. We are not saying that we want to be bound by everything else or that we want to use them necessarily. I thought you just identified, apparently I misunderstood, I thought you said we want the rest of the contract to still be there except for the exclusivity. Well, the only reason I say that, Your Honor, is that the judge's order that has been appealed by Veolia, by the appellant here, is, and I'm quoting from the record now,  where it says, now therefore it's ordered as follows, A, the solid waste disposal agreement appearing in the record as Plaintiff's Exhibit 1 is rescinded as between plaintiff and defendant and is no longer bound by the restrictive delivery covenants of said disposal agreement. Maybe that's what it does mean. It seems to me the second sentence is superfluous. Yeah, if it's rescinded, who cares? Everything's gone. Everything's gone. How does a partial rescission go? I don't even understand the concept. What does that mean? Because that's what was prayed for. Did you ask for everything to continue but exclusivity? No, we simply, we focused the complaint, Your Honor, asked for the court to declare in advance of having CC Disposal just go off and breach this and go off and deal somewhere else all the time, I advised that it was best to go ask the court for direction as the Declaratory Judgment Acts allows, and we specifically asked for, and this is a part of the complaint, which is in the record, we requested that the court determine that Veolia has violated the contract that was attached as an exhibit to the complaint and that CC Disposal is no longer bound by the restrictive delivery covenants of the disposal agreement for such other and further relief than usual. So that's essentially just the exclusivity. That's all we. So what you want, apparently what you wanted is to say everything is still present in the contract, but we are not required to use Veolia exclusively. I was trying to interpret as the lawyer what I think the court ruled based on. But is that what you were, I'm trying to. That is not what we, if my clients could obtain a complete rescission and if we have in fact, if that's the interpretation of the trial court's order, and now that I read it again for the umpteenth time, maybe it is because it does say the solid waste disposal agreement appearing in the record as exhibit one is rescinded as between itself. It reminds me of my favorite joke, counsel, at the Rodney Dangerfield when he says, visits his doctor, and he's not feeling well, and his doctor says, examines him and says, Mr. Dangerfield, bad news, bad news is that you have a terminal illness and you have only three weeks to live. And Dangerfield says, well that's awful, I want a second opinion. He says, okay, you're ugly too. Seems to me that's what we essentially have here. The trial court said, this contract is rescinded, and by the way, you're not bound. Yeah, you're not bound. Yeah, well, as Justice Connick points out, why isn't that just all simplicage and unnecessary? And besides, I'm not even sure how it would work. That's a very good point. We were trying to be conservative. We've tried to be conservative all along. Instead of advising a commercial business like this company, this hauler, to go off and just because they closed one day a week, just disregard the entire contract, we need to go to court and get what Well, it seems to me also, Counsel, that the whole idea is if you wanted to continue with this contracts in force, that the remedy you've chosen doesn't seem to fit the violation that occurred, and I think Mr. Knuth's argument about you just have to get damages would be particularly meaningful. In other words, you've got damages or you've got rescission. Well, we want rescission. We do not want to be bound. The question was whether or not there was a partial relief, because again, I go back to the complaint that we filed in the Declaratory Judgment Act. It prayed for relief from at least a part of the contract, but maybe that's not possible, and the order says what it says. If it means that there's a total rescission, then we're happy with that. My client will be abundantly and completely happy with that. And so I guess the point that I wanted to make is in citing the one case by Justice Garmon, the AG Farms case, clearly there's no obligation to consider an alternative remedy of damages. By the way, there's a procedural question I wanted to ask. I don't know if Mr. Knuth was trial counsel on behalf of Fenton's case. He was not. Well, here's the question. Your complaint for declaratory judgment, doing it as essentially a complaint to be sent in a contract, which I think trial court granted, was there ever a motion to dismiss made by the defendants at the trial level saying, wait a minute, assuming all this badness, that's the one wrong relief. That should be dismissed and we should be just in the hearing on damages. Did that ever occur at the trial level? There was a motion to dismiss, but I have to check the record to see. I do not believe that was the thrust of the motion. But I know that the argument was made not at summary judgment, but at the trial counsel for Veolia did make the argument that, well, we should be able to calculate based on what their witnesses had said. So this is after the evidence had been presented. But there's no challenge prior to that to the procedure of seeking rescission as opposed to damages. I don't want to misrepresent. But you know we can't. Because it seems to me that maybe this is one of those moments where the argument of defense is to reverse the trial court based on an argument not properly presented before it at the trial level. This is the wrong mechanism. That is, you shouldn't be able to rescind. You should just be required to get damages. Then a complaint that asks only for rescission should be dismissed or subject to a motion to dismiss and should be litigated before trial, it seems to me. But that's why Mr. Knuth will have an opportunity in rebuttal to address this. I guess the question is whether or not the AG Farms case and the decision, again, several years ago by this court, that that kind of alternative remedy, this is appropriate. And I think this kind of relief is what the Declaratory Judgment Act contemplated. Instead of having parties just go off and start taking actions willy-nilly because they're mad about something or because they think the other side is brief, we went in and we tried to get the court to tell us. Well, I think a complaint with declaratory judgment could clearly be a basis for seeking rescission or a contract. You asked for no damages at all in your initial complaint? We did not. Okay. There was only one. Thank you. Thank you, counsel. Rebuttal, Mr. Knuth? Yes. What about this last point, Mr. Knuth? If they haven't asked for damages and you are claiming that rescission is not the appropriate remedy, shouldn't you make a motion to dismiss and require them to file a complaint for damages and have this matter addressed to the trial court in a timely fashion as opposed to just asking and not stating because I'm not sure of the record? Isn't this essentially an argument which isn't timely now to be made to us, that is arguing that there should be damages only? Well, I agree with Your Honor that perhaps the appropriate method would be to file a motion to dismiss, and I'll note from the table of contents to the record that a 2-6-19 motion was filed by Veolia, but I apologize, like counsel, I can't speak to the contents. I was not trial counsel and I reviewed that in the record, but I can't speak to that. Fair enough. We'll find out. But I think that counsel's comments highlight the lack of clarity provided by the trial court with regard to this matter. There are simply some gaps in the findings of the trial court that require either reversal or remand to consider the appropriateness of a legal remedy. The fact that even counsel cannot interpret the order entered by the court, which my reading is I think it granted rescission, and that's what we've been operating pursuant to. That's essentially the argument you made to this court. That's right. But, Your Honor, I would argue that this is akin to a situation where a business has a contract with a component supplier and for a period of time that supplier is unable to provide the component parts necessary for the business and at some later point is able to re-engage and continue and supply that component part. That may result in damages to me as a business since I can't get my component parts to maintain my production. But if we were to allow rescission in every instance like that where a party was unable to fulfill an order or in this instance to operate on a particular day for a finite period of time, then we would have a whole lot more contracts being rescinded than we're currently seeing now. I maintain that at least the consideration of a legal remedy is the appropriate route to go here, and there is no indication in the record that the trial court even considered that. So I would argue that the judgment here that granted rescission should be reversed and at least remanded for further proceedings consistent with that. Thank you, counsel. Thank you. I take the matter under advice.